UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO C. ENCINAS,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>    Defendant. | No. 1:19-cv-00470-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY** |

**I.     Introduction**

Plaintiff Julio C. Encinas ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 26, 30, 31. After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision. Plaintiff's appeal is therefore granted.

**II.    Procedural Background**

On March 19, 2015 Plaintiff filed applications for disability insurance benefits and supplemental security income claiming disability beginning December 1, 2013 due to major depression, panic disorder with agoraphobia, arthritis, bipolar disorder, "hand skin condition" and diabetes. AR 317–29, 358. The Commissioner denied the application initially on June 24, 2015, and on reconsideration on January 13, 2016. AR 255–62, 266–77.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 14 and 17.

"ALJ") on September 14, 2017. AR 152–90. Plaintiff appeared at the hearing pro se. On March 14, 2018 the ALJ issued a decision denying Plaintiff's application. AR 17–30. The Appeals Council denied review on November 20, 2018. AR 5–10. On April 11, 2019 Plaintiff filed a complaint in this Court. Doc. 1.

### III.  Factual Background

#### A.  Plaintiff's Testimony

Plaintiff (born April 1974) lived with his mother and younger brother. AR 179. He completed school through seventh grade. AR 166. He received special education for reading. AR 166. He had difficulty reading and writing but received help from his sister. AR 166–67. He could read street signs and write a grocery list. AR 167. He last worked as a mechanic helper in 2013. AR 169. He also worked at Friendly Motors from 2002-2006 as a mechanic and lot boy washing and detailing vehicles. AR 170. He was on his feet most of the work day. AR 169. He lifted tires or mechanic equipment weighing 50 pounds or more. AR 170.

In 2013 he started getting very sick. AR 170. He continued looking for work but got fired from his jobs quickly. AR 172. He was diagnosed with bipolar manic depression and arthritis. AR 172. He had pain in his back, right shoulder, joints, knees and arms. AR 172. He was treated with pain medication and shots and had surgery scheduled for the week after the hearing. AR 172. His pain kept him up all night and he slept all day. AR 173. Pain injections provided temporary relief. AR 175. Hydrocodone provided some relief as well but he tried not to take it too often. AR 176. His diabetes was under control some days but not others. AR 177. He experienced some vision complications due to his diabetes. AR 177. His mother helped him take his antidepressants and other medication but he didn't track them. AR 178.

He generally self-isolated in his room. AR 179. On a typical day he brushed his teeth, his mother prepared his breakfast and he spent the rest of the day inside. AR 180. He did not go out much other than to see the doctor. AR 180. He occasionally went out to eat with his mother or to church with his sister. AR 180. He had no friends. AR 180. He had no difficulties dressing. AR 180. He had difficulty remembering work instructions which is why he lost his jobs. AR 181.

#### B.  Vocational Expert Testimony

The ALJ questioned the VE regarding a hypothetical claimant with Plaintiff's vocational profile who was limited to light work with the following limitations: occasional postural activities; occasional overhead reaching with the right upper extremity; occasional exposure to environmental extremes; limited to simple tasks with occasional interaction with the public, coworkers and supervisors; could work in proximity to coworkers but not on joint tasks. AR 184–85. The VE testified that such an individual could not perform Plaintiff's past relevant work as a mechanic but could perform other work existing in significant numbers in the national economy, to wit: hand packer, sub-assembler and cleaner. AR 185. If the individual was off task 15% of a work day due to pain and/or psychological symptoms, no work would be available. AR 186. If the individual had two unscheduled absences from work per month, no work would be available. AR 186.

### C.     Consultative Examinations; Opinions; Prior Administrative Findings

On June 4, 2015, non-examining stage agency medical consultant Dr. Quint reviewed Plaintiff's medical file at the initial level through May 6, 2015 and opined that Plaintiff could perform medium work with occasional climbing of ladders, ropes and scaffolds, and frequent performance of other postural activities. AR 199–201. On January 6, 2016 non-examining state agency medical consultant Dr. Bobba reviewed Plaintiff's medical file on reconsideration through December 2015 and opined that Plaintiff could perform light work with occasional performance of postural activities, and occasional overhead reaching with the right upper extremity. AR 230–232.

On November 7, 2017 Dr. Afra performed a consultative physical examination of Plaintiff at the request of the agency. AR 1115. He reviewed no medical records. AR 1115. Dr. Afra noted tenderness and painful ROM in Plaintiff's right shoulder. AR 1118. Dr. Afra noted pain and reduced ROM in Plaintiff's dorsolumbar spine. AR 1118. Findings were otherwise unremarkable. Dr. Afra opined that Plaintiff could perform medium work with no more than frequent reaching with the right upper extremity, frequent performance of postural activities, frequent walking on uneven terrain and frequent exposure to heights. AR 1120.

### IV.     Standard of Review, Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the

Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### VI. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 1, 2013. AR 19. At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, right shoulder osteoarthritis status post-surgery, right elbow arthritis, lumbar degenerative disc disease, obesity, depression, bipolar disorder and posttraumatic stress disorder. AR 20. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with the following limitations: occasional postural activities; occasional overhead reaching with the right upper extremity; occasional exposure to environmental extremes; limited to simple tasks with occasional interaction with the public, coworkers and supervisors; could work in proximity to coworkers but not on joint tasks. AR 21–

28.  At step four, considering Plaintiff's RFC, the ALJ found that Plaintiff could not perform his past relevant work as a mechanic.  AR 29.  At step five, in reliance on the VE's testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, to wit: hand packer, assembler and cleaner.  AR 30.  Accordingly, the ALJ found that Plaintiff had not been under a disability since December 1, 2013.  AR 30.

### VII. Issues Presented

Plaintiff contends that the ALJ erred in failing to provide necessary background information to the consultative examiner regarding Plaintiff's physical impairments, and erred in relying upon outdated assessments of the non-examining physicians.  Br. at 1, Doc. 26.  Plaintiff also contends that the ALJ improperly rejected his testimony and a third-party function report.  The Court agrees that the ALJ erred in relying upon outdated assessments of the non-examining physicians.  Because the ALJ discounted Plaintiff's testimony and the third-party function report as inconsistent with and/or unsupported by the objective medical evidence, those matters should also be revisited after all pertinent medical evidence is evaluated by a physician.

### A.  Providing Background Information To Consultative Examiner; Reliance on State Agency Physicians

#### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so, the ALJ must

determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

### 2. CE Opinion

Plaintiff contends that the ALJ erred by giving weight to the opinion of the consultative examiner, Dr. Afra, despite the fact that he was not provided Plaintiff's medical records for review. Br. at 13. Plaintiff relies on regulations requiring the agency to provide consultative examiners with "any necessary background information" about a claimant's condition, which some courts have interpreted to mean medical records. *Id.* (citing 20 C.F.R. 404.1517, 20 C.F.R. 416.917). Plaintiff's cited cases are factually distinguishable.

Three of Plaintiff's cited cases involved reversal of an ALJ's decision to adopt the opinion of a CE over the contrary opinion of a treating physician or other examining opinion where the CE whose opinion the ALJ adopted did not have access to pertinent medical records. *See* Br. at 13–14 (citing *Turk v. Berryhill*, No. 2:17-CV-00767 AC, 2018 WL 3363738, at *5 (E.D. Cal. July 10, 2018); *Valle v. Astrue*, No. CV 08-4389-MAN, 2010 WL 669100, at *7 (C.D. Cal. Feb. 23, 2010); *Peacock v. Comm'r of Soc. Sec. Admin.*, No. CV-17-00523-PHX-BSB, 2018 WL 2753151, at *7 (D. Ariz. June 8, 2018)). Here, by contrast, the CE's opinion was the only examining opinion of record and there was no contrary opinion at issue.

In another case cited by Plaintiff, the court's conclusion that the CE was not provided "necessary background information" was partially predicated on the CE's own statement that he needed access to the claimant's psychiatric hospitalization records in order to properly evaluate the

claimant, records which the ALJ did not provide. *Pamela E. v. Saul*, No. 4:19-CV-00004-SLG, 2019 WL 6257728, at *13 (D. Alaska Nov. 22, 2019). Here, the CE made no such statement.

Plaintiff also cites *Ladue*, in which the court found that the ALJ improperly accorded "considerable weight" to a CE's opinion. *Ladue v. Chater*, No. C-95-0754 EFL, 1996 WL 83880, at *5 (N.D. Cal. Feb. 16, 1996). The court's conclusion that the CE was not provided necessary background information appeared to be partially predicated on the fact that the CE's notes revealed a misunderstanding about the claimant's medical history. *See id* (noting that the CE "was aware that Plaintiff was on Elavil but incorrectly guessed that it was for depression instead of arthritis."). Here, by contrast, the ALJ accorded only partial weight to the CE's opinion, not "considerable weight," and there is no evidence that the CE's lack of medical records caused any similar misunderstandings about the nature of Plaintiff's condition or treatment.

None of Plaintiff's cited cases directly support the proposition that an ALJ commits reversible error when she accords any amount of weight to an uncontradicted opinion of a CE who reviewed no medical records. Nevertheless, the ALJ's opinion cannot be sustained solely based on the CE's opinion particularly where, as here, the ALJ only assigned it partial weight, assigning greater weight to the opinions of non-examining physicians who "had the opportunity to review many of the claimant's treatment records in addition to Dr. Afra's report." AR 28.

### 3. **Non-examining Opinions**

Plaintiff contends that the ALJ improperly relied on outdated opinions of non-examining state agency physicians, opinions which predated nearly two years' worth of medical developments triggering the ALJ's duty to further develop the record with updated opinions. Defendant contends that there is no requirement that state agency physicians review the entire record as there is always a time lapse between the stage agency consultant's report and the ALJ's decision.

The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150. The Court in *Smith* provided a helpful discussion of this issue:

> Contrary to Plaintiff's assertion, an updated opinion is not required simply because additional medical evidence is received after the State agency physicians had already reviewed Plaintiff's records . . . Such an occurrence is quite common . . .[i]n virtually every case further evidence is received after the [S]tate agency physicians render their assessments—sometimes additional evidence and records are even received after the ALJ hearing. For that very reason, the ALJ is tasked with considering the evidence in the record as a whole.  Plaintiff cites cases in which a duty to develop the record arose . . . but these were limited to situations where the subsequent objective evidence *suggest[ed] a condition that could have a material impact on the disability decision* . . . or where the later records consisted of *raw medical data* . . . Here, in contrast, the evidence Plaintiff directs the Court to review is relatively unremarkable, straightforward, and, to some extent, based on subjective complaints similar to those discredited by the ALJ . . . None of these records establish the existence of any new condition not assessed by the ALJ, or show a *worsening of Plaintiff's existing conditions.*

*Smith v. Saul*, No. 1:19-CV-01085-SKO, 2020 WL 6305830, at *8 (E.D. Cal. Oct. 28, 2020) (internal citations and quotations omitted) (emphasis added).

This Court has recently addressed this issue on several other occasions.  Plaintiff relies on *Molina*, for example, in which the Court held that the ALJ erred in adopting opinions which predated medical developments including injuries the plaintiff sustained during an assault at work, as well as records reflecting subsequent imaging, examination and diagnoses. *Molina v. Berryhill*, No. 2:17-CV-01991 CKD, 2018 WL 6421287, at *4 (E.D. Cal. Dec. 6, 2018) (finding that the ALJ erred in making "an independent evaluation of the diagnosed impairments on plaintiff's ability to work on a function-by-function basis" without the aid of a medical expert, and remanding for a "consultative examination by a physician who had access to plaintiff's medical records through the May 2014 incident and its aftermath."). *Id.*

Similarly, in *Stevenson* the Court held that the ALJ erred in adopting a non-examining opinion which pre-dated "plaintiff's treating records regarding the progression of his spinal impairments . . ." *Stevenson v. Colvin*, No. 2:15-CV-0463-CKD, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015).  Relatedly, in *Goodwin* the Court found that the ALJ erred in adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall in November

2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis . . ." *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019).

Defendant relies on *Findley* in which the Court held that the ALJ's duty to further develop the record was not triggered where there were medical records post-dating the medical opinion evidence. *Findley v. Saul*, No. 1:18-CV-00341-BAM, 2019 WL 4072364, at *5 (E.D. Cal. Aug. 29, 2019). The Court in *Findley* noted that "Plaintiff's suggestion that the records post-dating their opinions would have changed the opinions of the state agency physicians is mere speculation and not persuasive." *Id.* Although there was limited discussion of the medical records post-dating those opinions, earlier in the decision the Court noted that the records did not suggest that his COPD had worsened, but in fact suggested the opposite. *Id.* Similarly, in *Hernandez* the undersigned held that the ALJ's duty to further develop the record was not triggered where the records post-dating the medical opinions consisted of chiropractic treatment for a pre-existing back condition as well as knee and foot imaging results revealing MCL sprain, meniscus tear, calcaneal osteophytes and degenerative changes. *Hernandez v. Saul*, No. 1:19-CV-01298-GSA, 2020 WL 6700224, at *9 (E.D. Cal. Nov. 13, 2020). The undersigned noted that there was no evidence of escalating care or a worsening of Plaintiff's back condition and "[d]espite seemingly significant diagnoses after foot and knee imaging, there is no indication that Plaintiff received any treatment beyond ibuprofen, naproxen, and recommendation for heel support and supportive shoes." *Id.*

Here, the Court finds that the medical developments post-dating the state agency physicians' review created ambiguity requiring an updated medical opinion. On June 4, 2015, non-examining stage agency medical consultant Dr. Quint reviewed Plaintiff's medical file at the initial level through May 6, 2015 and opined that Plaintiff could perform a range of medium work. AR 199–201. Medical records through May 6, 2015 revealed, inter alia: mildly restricted neck ROM;

spinal misalignment, tenderness, and stiffness; mild hypoesthesia; painful straight leg raise; lumbar reduced ROM; shorter right leg; positive kemp's test; dislocated vertebrae; shoulder bursitis; bilateral rotator cuff calcific tendinitis; paraspinal tenderness and spasm; treatment with pain medication and corticosteroid injections; bilateral periarticular knee erosion suggestive of inflammatory arthritis; deltoid atrophy; acromial and subacromial tenderness and crepitus. AR 462-86; 549-574; 645; 851.

On January 6, 2016, non-examining state agency medical consultant Dr. Bobba reviewed Plaintiff's medical file on reconsideration through December 7, 2015 and opined that Plaintiff could perform light work with occasional performance of postural activities and occasional overhead reaching with the right upper extremity. AR 230–232. Medical records from May 6, 2015 to December 7, 2015 revealed, inter alia: continued tenderness to palpation in the lumbosacral spine; depo-medrol injection for joint pain and patellofemoral syndrome; toradol injection for myalgia and myositis; left knee sprain; Kenalog injection to the right knee; corticosteroid injection to right shoulder; localized primary osteoarthritis of the right shoulder. AR 577–605.

After December 7, 2015, Plaintiff continued receiving medical care through the date of the administrative hearing nearly two years later. None of those records were reviewed by a physician. The ALJ described the post December-2015 records as follows:

> Bilateral shoulder x-rays in January 2016 revealed calcific deposition bilaterally at the level of the greater tuberositis consistent with calcific tendinosis of the rotator cuff; and no fracture or subluxation at the shoulders. Lumbar spine x-ray in June 2016 displayed disc degeneration at L4-L5 with lesser degrees of degeneration elsewhere throughout the lumbar spine. Magnetic resonance imaging (MRI) of the lumbar spine in July 2016 demonstrated no acute fracture or subluxation at the lumbar spine; at L4-5, combination of facet degenerative change, moderate ligamentum flavum thickening and mild posterior disc bulge resulting in moderate central canal and mild to moderate neural foraminal narrowing; and at L5-S1, moderate facet degenerative changes, slight disc bulging (more asymmetric left posterolateral) resulting in mild central canal, mild to moderate superior left lateral recess narrowing and mild bilateral neural foraminal stenosis (Ex. 11F19-20). . . . In February and March 2017, the claimant underwent lumbar epidural injections. He subsequently underwent a series of medial branch nerve blocks at left L4, L5 and S

11

> 1 (Ex. 14F:12, 13; 16F:14, 15). MRI of the right shoulder revealed thickening of the inferior capsule suggestive of adhesive capsulitis right shoulder. He also has supraspinatus impingement syndrome with intrinsic tear of the supraspinatus insertion (Ex. 12F: 19). On September 20, 2017, the claimant underwent manipulation of the right shoulder under general anesthesia, right shoulder arthroscopy with arthroscopic coracoacromial ligament release, anterior acromioplasty, modified Mumford procedure, and subacromial bursectomy of the right shoulder . . . On May 29, 2016, the claimant was admitted to Mercy Hospital (MH) after presenting to the emergency room (ER) with complaint of RUE swelling and pain. He went to a water park and while sliding on a waterslide, scraped his right elbow. The following day, he developed extensive swelling with edema and tenderness, and erythema.

AR 23–24. These medical developments post-dating the agency physicians' review more closely resemble the facts of *Molina*, *Stevenson*, and *Goodrich* than *Findley, Hernandez* and *Smith*.

First, Plaintiff suffered a new injury to his right arm resulting in an emergency room visit, admission to the hospital and development of extensive swelling, edema and erythema. *Id.* Second, shoulder imaging results as described by the ALJ above revealed findings of potential clinical significance, several of which appeared to be novel findings not apparent in the ALJ's summary of the earlier dated records reviewed by the agency physicians. Third, Plaintiff's right shoulder treatment escalated beyond pain medication and injections, and he ultimately underwent surgery. *Id.* Fourth, imaging of the lumbar spine revealed disc degeneration, resulting in a diagnosis of degenerative disc disease of the lumbar spine (which the ALJ found to be a severe impairment), a diagnosis not present in the records reviewed by the agency physicians. Fifth, as the ALJ's summary reveals, the records post-dating the agency physicians' review contain findings therein that were not self-evident, nor do they appear largely susceptible to lay understanding. Sixth, the records post-dating the agency physicians' review were extensive and covered nearly two years' worth of medical developments, which accounts for roughly half of the relevant period at issue starting from the Plaintiff's December 2013 onset date through the date of the ALJ's decision. Finally, considering that the medical developments during the seven months between the initial and

reconsideration levels warranted a reduction in Plaintiff's RFC from medium to light work,[2] thus it stands to reason that the additional developments during this two year period very well could have warranted a further reduction in Plaintiff's RFC. Considering all of these facts, it was error for the ALJ to independently analyze the records post-dating the agency physicians' review without the aid of a medical expert. The ALJ's duty to further develop the record was triggered warranting an updated medical opinion from a physician with access to all relevant records.

Defendant notes that the ALJ did obtain a consultative examination of Plaintiff after the hearing. However, that examiner did not have access to Plaintiff's records. As noted above, there is no authority directly supporting the notion that an ALJ must always provide a CE with medical records. However, in cases such as this one involving substantial medical developments post-dating agency physician review, as described above, those records needed to be reviewed by a physician, not just by the ALJ.

### VIII. Remand for Further Proceedings

Remand is appropriate for the ALJ to develop the record with a medical opinion from a physician who reviews all medical evidence in the administrative record. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Because the ALJ discounted Plaintiff's testimony and the third-party function report as inconsistent with and/or unsupported by the objective medical evidence, those matters should also be revisited after all pertinent medical evidence is evaluated by a physician, not just by the ALJ.

---

[2] *See* AR 227 ("Addtl TS MER indicates clmt has LS abn, TTP, spasms in paraspinal muscles, gait wnl, CTS, depression, DMII, lumbago, psoriasis, right shoulder pain, HTN, OA of right knee, there is decreased and atrophy of right shoulder muscles, and ESI in rt shoulder and rt knee due to pain from OA, *suggest reducing RFC to light RFC with occ OH reaching in RUE from AOD to current*?") (emphasis added).

### IX. Order

The Court finds that substantial evidence and applicable law do not support the ALJ's conclusion. Accordingly, it is ordered that the Commissioner's decision is reversed, and this matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The Clerk of Court is directed to enter judgment in favor of Plaintiff Julio Encinas and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 17, 2021**                   /s/ Gary S. Austin
                                                             UNITED STATES MAGISTRATE JUDGE